RECORD NOS. 13-2112(L); 13-2127

In The

# United States Court of Appeals

### For The Fourth Circuit

## In re:  NORFOLK SOUTHERN RAILWAY COMPANY

-----------------------------------

## GILBERT BYNUM,

*Plaintiff – Appellee,*

**v.**

## NORFOLK SOUTHERN RAILWAY COMPANY,

*Defendant – Appellant.*

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA AT NORFOLK

———————————

### BRIEF OF APPELLEE

———————————

**William D. Breit**
**SERIOUS INJURY LAW CENTER PLLC**
**5544 Greenwich Road, Suite 100**
**Virginia Beach, Virginia  23462**
**(757) 456-0333**

*Counsel for Appellee*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __13-2112__    Caption: __Gilbert Bynum v. Norfolk Southern Railway Company__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Gilbert Bynum__
(name of party/amicus)

_____

who is _____Appellee_____, makes the following disclosure:
            (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                              ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                    ☐ YES ☑ NO
      If yes, identify all such owners:

- 1 -

4.      Is there any other publicly held corporation or other publicly held entity that has a direct
        financial interest in the outcome of the litigation (Local Rule 26.1(b))?      ☐YES ☑NO
        If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
        If yes, identify any publicly held member whose stock or equity value could be affected
        substantially by the outcome of the proceeding or whose claims the trade association is
        pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?      ☐YES ☑NO
        If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ William D. Breit _____      Date: _____ 9/23/13 _____

Counsel for: Gilbert Bynum _____

## CERTIFICATE OF SERVICE
****************************

I certify that on _____ 9/24/13 _____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

Daniel R. Warman, Esq.                     Steven M. Legum, Esq.
Ventker & Warman, PLLC                     Goldblatt, Cohen & Legum, P.C.
101 West Main Street, Suite 810            555 E. Main Street, Suite 1102
Norfolk, VA  23510                         Norfolk, VA  23514

/s/ William D. Breit _____          _____ 9/23/13 _____
        (signature)                                        (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __13-2127__     Caption: __Gilbert Bynum v. Norfolk Southern Railway Company__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Gilbert Bynum__
(name of party/amicus)

_____

who is _____Appellee_____, makes the following disclosure:
          (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?    ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO
      If yes, identify all such owners:

- 1 -

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ William D. Breit          Date:        10/02/13

Counsel for: Gilbert Bynum

## CERTIFICATE OF SERVICE
**************************

I certify that on _____10/02/13_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Daniel R. Warman, Esq.                 Steven M. Legum, Esq.
Ventker & Warman, PLLC                 Goldblatt, Cohen & Legum, P.C.
101 West Main Street, Suite 810        555 E. Main Street, Suite 1102
Norfolk, VA  23510                     Norfolk, VA  23514

/s/ William D. Breit                                    10/02/13
_____                        _____
(signature)                                            (date)

# <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

TABLE OF AUTHORITIES ..................................................... ii

JURISDICTIONAL STATEMENT ..........................................1

STATEMENT OF ISSUES ........................................................2

STATEMENT OF CASE ...........................................................2

SUMMARY OF ARGUMENT ...................................................3

ARGUMENT .............................................................................4

CONCLUSION .........................................................................15

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*American Dredging Co. v. Miller*,
    510 U.S. 443, 114 S. Ct. 981 (1994) .............................................................11

*CGM, LLC v. BellSouth Telecomms, Inc.*,
    664 F.3d 46 (4th Cir. 2011) ..........................................................................13

*Chesapeake & Ohio Railway Co. v. Schwalb*,
    493 U.S. 40, 410 S. Ct. 381 (1989) ..........................................................6, 11

*Conti v. Norfolk and Western Railway Company*,
    566 F.2d 890 (4th Cir. 1977) ...........................................................................4

*Dewsnup v. Timm*,
    502 U.S. 410, 112 S. Ct. 773 (1992) ............................................................14

*Edmonds v. Compagnie Generale*,
    443 U.S. 256, 99 S. Ct. 2753 (1979) ............................................................10

*Etheridge v. Norfolk and Western Railway Company*,
    9 F.3d 1987 (4th Cir. 1993) ................................................................6, 11, 12

*Freeman v. Norfolk Western Railway Company*,
    596 F.2d 1205 (4th Cir. 1979) .........................................................................4

*Jones & Laughlin Steel Corp. v. Pfeifer*,
    462 U.S. 523, 103 S. Ct. 2541 (1983) .....................................................10, 11

*Kremer v. Chemical Construction Corp.*,
    456 U.S. 461, 102 S. Ct. 1883 (1982) ..........................................................12

*Lies v. Farrell Lines, Inc.*,
    641 F.2d 765 (9th Cir. 1981) .........................................................................11

ii

*Lynch v. Lyng*,
  872 F.2d 718 (6th Cir. 1989) ..........................................................13

*Nordan v. Blackwater*,
  460 F.3d 576 (2006) ......................................................................15

*Northeast Marine Terminals Company, Inc. v. Caputo*,
  432 U.S. 249, 97 S. Ct. 2348 (1977) ............................................5, 9

*Parden v. Terminal R of Alabama State Docks*,
  377 U.S. 184, 84 S. Ct. 1207 (1964) ..............................................7

*Patterson v. CSX Transportation, Inc.*,
  245 Va. 483, 429 S.E.2d 215 (1993) ..........................................5, 11

*Radzanower v. Touche Ross & Co.*,
  426 U.S. 148, 96 S. Ct. 198 (1976) ............................................12, 13

*Seaboard AL Railway v. Horton*,
  233 U.S. 492, 34 S. Ct. 635 (1914) ................................................7

*Seas Shipping Co, Inc. v. Sieracki*,
  328 U.S. 85, 66 S. Ct. 872 (1946) ................................................10

*Shives v. CSX Transportation, Inc*,
  151 F.3d 164 (1998) ....................................................................6, 15

*Sinkler v. Missouri & Pacific R Co.*,
  356 U.S. 326, 78 S. Ct. 758 (1958) ................................................7

*Southern Pacific Co. v. Jenson*,
  244 U.S. 205, 37 S. Ct. 524 (1917) ................................................9

*Southwest Marine, Inc. v. Gizoni*,
  502 U.S. 81, 112, S. Ct. 486 (1991) ..............................................10

*State Industrial Comm'n v. Nordenholt Corp*,
  259 U.S. 263, 42 S. Ct. 473 (1922) ................................................9

*Stiltner v. Beretta USA*,
    74 F.3d 1473 (4th Cir. 1996) ...................................................................13, 14

*United States v. Abdel Shafi*,
    592 F.3d 602 (4th Cir. 2010) ........................................................................13

*Waldburger v. CTS corp.*,
    723 F.3d 434 (4th Cir. 2013) ........................................................................13

## **STATUTES**

28 U.S.C. § 129 ...............................................................................................2

28 U.S.C. § 919 ...............................................................................................2

28 U.S.C. § 921 ...............................................................................................2

28 U.S.C. § 1333 .............................................................................................1

28 U.S.C. § 1441(a) .........................................................................................1

28 U.S.C. § 1445(a) ......................................................................................1, 2

28 U.S.C. § 1447(d) ......................................................................................1, 2

33 U.S.C. §§ 901 et seq....................................................................................1

33 U.S.C. § 902(3)(b).....................................................................................11

33 U.S.C. § 903(a) ...........................................................................................5

33 U.S.C. § 904 .............................................................................................11

33 U.S.C. § 905(a) ...............................................................................6, 11, 16

33 U.S.C. § 905(b) ......................................................................................4, 10

33 U.S.C. § 921 ...............................................................................................2

45 U.S.C. § 51 .............................................................................................7, 8

45 U.S.C. §§ 51 et seq.................................................................4, 6, 8

45 U.S.C. § 55 ............................................................................8, 9, 14

45 U.S.C. § 58 ..........................................................................8, 14, 15

46 U.S.C. § 688 ...............................................................................11

## **OTHER AUTHORITY**

G. Gilmore & C. Black, Law of Admiralty (2d ed. 1975).........................5

## JURISDICTIONAL STATEMENT

Pursuant to 28 U.S.C. § 1445(a) any action filed in State court against a railroad may not be removed to the District Court of the United States. Pursuant to 28 U.S.C. § 1447(d) an order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise. Consequently, the Court of Appeals lacks jurisdiction to consider the appeal of Norfolk Southern.[1]

Norfolk Southern alleges that the Court of Appeals has jurisdiction to consider this appeal pursuant to 28 U.S.C. § 1441(a) and 28 U.S.C. § 1333 (Appellant brief, p. 2). The railroad's reliance on both statutes is incorrect. 28 U.S.C. § 1333 is the grant of original jurisdiction in admiralty and maritime cases. Admiralty jurisdiction has no application to the issue of coverage under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901 et seq.

28 U.S.C. § 1441(a), the removal statute, states,

(a) "Except as otherwise expressly provided by Act of Congress, any civil action brought in State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant…" (emphasis added)

28 U.S.C. § 1445(a) expressly provides that railroad cases may not be removed to any district court. By its express limitation, 28 U.S.C. § 1441(a) is not

---

[1] The Appellee, Gilbert Bynum, on November 26, 2013 filed a Motion to Dismiss the appeal on jurisdictional grounds.

applicable to railroad cases because Congress expressly provided that railroad cases are nonremovable. In addition, the District Court does not have original jurisdiction of "LHWCA" cases.  Original jurisdiction of "LHWCA" claims is with the Department of Labor and the Benefits Review Board. 28 U.S.C. §§ 919, 921. The District Court does not and cannot have original jurisdiction of a "LHWCA" case. Consequently, Norfolk Southern has failed to establish jurisdiction in the United States Court of Appeals, and this appeal should be dismissed.

## STATEMENT OF ISSUES

Norfolk Southern requests the Court of Appeals vacate the District Court's remand order and remand this case back to the District Court with instructions to dismiss the case for lack of subject matter jurisdiction. To reach this result, Norfolk Southern urges the Court of Appeals to ignore the prohibition of 28 U.S.C. § 1445(a) that railroad cases are nonremovable and also ignore 28 U.S.C. § 1447(d) which establishes that remand orders are not reviewable on appeal or otherwise.

## STATEMENT OF CASE

Norfolk Southern attempts to categorize this appeal as a final disposition of an exclusively federal question ("LHWCA" jurisdiction) (brief p. 3). To the contrary, the District Court made no final disposition of the exclusivity provisions of the "LHWCA". Nor is the remand order a final judgment as contemplated by 28 U.S.C. § 129. 33 U.S.C. § 921 does not apply to the facts of this case because there

2

is no person adversely affected or aggrieved by a final order of the Benefits

Review Board. Likewise, the question of coverage under the "LHWCA" was never

an issue in the District Court since the parties were in agreement that the plaintiff,

Gilbert Bynum received voluntary benefits under the provisions of the "LHWCA"

(App. pp. 10, 68, 74). Stated concisely, there is no question involving coverage

under the "LHWCA" before the appellate court.

## SUMMARY OF ARGUMENT

The Court of Appeals lacks subject matter jurisdiction of this appeal.

Whether the exclusivity provisions of "LHWCA" may be a defense to Bynum's

FELA claim is not before Court. The District Court found Norfolk Southern's

Motion to Dismiss moot by virtue of its remand order (App. p. 87).

Assuming arguendo, that this court finds that the District Court should not

have remanded the case back to the State court, Norfolk Southern's Motion to

Dismiss has not been addressed in the District Court. It would be premature to

remand the case back to the District Court with instructions to dismiss without first

considering the issue of whether the "LHWCA" precludes the filing of a "FELA"

claim by the plaintiff after receiving "LHWCA" benefits.

# ARGUMENT

This appeal is ultimately about whether the exclusive employer liability provisions of 33 U.S.C. § 905(b) preclude a railroad worker from filing a liability claim against a railroad under the Federal Employers' Liability Act, 45 U.S.C. §§ 51 et seq. ("FELA"). "FELA" and the "LHWCA" are mutually exclusive compensation regimes. For years prior to 1989 a railroad worker could receive benefits under the "LHWCA" and thereafter file a subsequent claim under "FELA". _Freeman v. Norfolk Western Railway Company_, 596 F.2d 1205 (4th Cir. 1979). This court has also found that Barney Yard workers, who unload coal from railroad hopper cars, the very same job at issue here, were not "maritime employees" covered under the "LHWCA" and their exclusive remedy lies under "FELA". _Conti v. Norfolk and Western Railway Company_, 566 F.2d 890 (4th Cir. 1977).

> "It is clear that in the cases before us the occupations of the plaintiffs were not of a traditionally maritime nature, but on the contrary were those traditionally associated with railroading. Their tasks and responsibilities with respect to the unloading of the coal from the hopper cars would have been the same at an inland terminal as they were at Lamberts Point, and the sophisticated automation of the facilities at the latter terminal should not obscure the basic fact that the plaintiffs were engaged in unloading a coal train, not loading a vessel. We find nothing in the Amendments or the legislative history to indicate that under these circumstances the Congress intended to transfer the redress of such injured railroad workers from the FELA to the Longshoremen's Act." _Conti v. Norfolk and Western Railway Company_, 566 F.2d at 895 (4th Cir. 1977).

4

These decisions were subsequently overturned by the 1972 Amendments to the "LHWCA". Prior to the "LHWCA" amendments in 1972, the "LHWCA" covered only those injuries occurring on navigable waters. *Northeast Marine Terminals Company, Inc. v. Caputo*, 432 U.S. 249, 259, 97 S. Ct. 2348 (1977). In the 1972 amendments, Congress extended coverage of the "LHWCA" to injuries occurring on shore by expanding the definition of navigable waters to include adjoining piers, wharfs, etc., but also established an additional requirement that an employer "be engaged in maritime employment." *Id.* at 264 (quoting 33 U.S.C. § 903(a)). The result was years of confusion. Commentators have described "the relationship between LHWCA and the otherwise applicable State Compensation Act as shrouded in impenetrable confusions." G. Gilmore & C. Black, Law of Admiralty, 409 (2d ed. 1975) (Gilmore) *Id.* at 259.

In *Patterson v. CSX Transportation, Inc.*, 245 Va. 483, 429 S.E.2d 215 (1993), the Virginia Supreme Court analyzed the two prong test for coverage under the "LHWCA" and concluded the railroad worker, Patterson, was engaged in maritime employment when injured while attempting to uncouple railway cars in order to move containers they carried to the boat track. Patterson's activity at the time of his injury constituted the "inception of the loading process." *Patterson v. CSX Transportation, Inc.*, 245 Va. at 486 (1993).

5

In *Etheridge v. Norfolk and Western Railway Company*, 9 F.3d 1987 (4th Cir. 1993), a railroad worker was injured prodding a railroad car toward the pier. The issue was whether the plaintiff's employment was essential to the loading process as defined in *Chesapeake & Ohio Railway Co. v. Schwalb*, 493 U.S. 40, 410 S. Ct. 381 (1989). Quoting Schwalb the Court said;

> "'*The loading process begins* when a hopper car is rolled down an incline to a mechanical dumper which…dumps the coal through a hopper onto conveyor belts.' *Id.* 42-43 (emphasis added). We believe that this statement makes plain that a brakeperson in the Barney Yard, who initiates the descent of railroad cars to the pier, begins the loading process and, therefore, engages in employment that is essential to the loading process. *See also Patterson v. CSX Trans., Inc.*, 429 S.E.2d 215, 217 (Va. 1993) holding in light of *Schwalb* that a 'switch operator' – a railroad employee responsible for switching trains to a 'boat track' spur that descended to the shore – was engaged in maritime employment because the activity 'constituted the inception of the loading process.'" *Etheridge*, 9 F.3d at 1090.

Each of these cases, including the case relied upon by Norfolk Southern, *Shives v. CSX Transportation*, 151 F.3d 164 (4th Cir. 1998) concludes with the general statement that because the injured employee is covered under the "LHWCA", his exclusive remedy is workers' compensation, and he is prohibited from pursuing a "FELA" claim. (Citing the provisions of 33 U.S.C. § 905(a)) None of these cases attempts an analysis of the concurrent statutory rights of railroad workers under both 33 U.S.C. § 905(a) and "FELA"; 45 U.S.C. §§ 51 et seq. Consequently, while coverage under the "LHWCA" extendedlandside, the statutory rights of railroad workers to sue railroads under "FELA" were being

preempted. By extending "LHWCA" coverage, the act came into complete conflict with "FELA". To conclude the "LHWCA" preempts "FELA" the court would have to violate the rules of statutory construction, is contrary to the legislative intent of Congress, and violates sections of "FELA" which prohibit such an interpretation.

45 U.S.C. § 51 specifically states that "every common carrier by railroad <u>shall</u> be liable in damages….for injury or death resulting in whole or in part from the negligence of common carriers and its employees. There are no exceptions. Congress enacted FELA in exercise of its constitutional power to regulate interstate commerce." *Parden v. Terminal R of Alabama State Docks*, 377 U.S. 184, 84 S. Ct. 1207 (1964). It was the intention of Congress to base "FELA" claims on negligence only, and to exclude responsibility of carriers to their employees for defects not attributable to negligence. In exchange, common law causes of action and common law defenses were eliminated. *Seaboard AL Railway v. Horton*, 233 U.S. 492, 34 S. Ct. 635 (1914). Importantly, "FELA" was an avowed departure from rules of common law, and responds to special needs of railroad workers who are daily exposed to risks inherent in railroad work and are helpless to provide adequately for their own safety. *Sinkler v. Missouri & Pacific R Co.*, 356 U.S. 326, 78 S. Ct. 758 (1958).

45 U.S.C. § 58 states;

"Nothing in this act (45 U.S.C. §51 et seq.) shall be held to limit the duty or liability of common carriers or to <u>impair the rights of their employees under any other Act or Acts of Congress."</u>

The plain meaning of section 58 is that any other Act of Congress, including compensation under "LHWCA", shall not limit the liability of the railroad under 45 U.S.C. § 51. This statute makes clear a railroad worker may pursue a "FELA" claim in addition to any other rights established by Acts of Congress. The railroad may not limit its duty or liability by relying upon some other Act or Acts of Congress. This statute makes clear that a railroad worker may pursue a "FELA" claim and also file a claim for benefits under "LHWCA".

45 U.S.C. § 55 states;

"Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this act [45 U.S.C. §51 et seq.] shall to that extent be void."

The plain meaning of this statutory language establishes that <u>the railroad may not exempt itself from any liability under "FELA".</u> Any attempt to do so, whether by contract, rule, regulation, or device, is void. In this case the railroad has voluntarily paid "LHWCA" benefits. The payments are a voluntary device and regulation whose purpose is to exempt itself from "FELA" liability.

By definition, 45 U.S.C. § 55 makes clear that the voluntary payment of compensation under "LHWCA" <u>shall not enable a railroad to exempt itself from any liability created by "FELA"</u>.

The legislative history of the "LHWCA" also supports the conclusion that "FELA" cannot be preempted by the exclusive remedy provisions of the "LHWCA". Longshoremen were not covered under State compensation programs as a result of the decision in <u>Southern Pacific Co. v. Jenson</u>, 244 U.S. 205 (1917). The "LHWCA" was the remedy for injured longshoremen injured on the seaward side of a pier without a compensation remedy while longshoremen injured on the pier were protected by State compensation Acts. <u>State Industrial Comm'n v. Nordenholt Corp</u>, 259 U.S. 263 (1922). The "LHWCA" was enacted to provide coverage for these longshoremen, but only for injuries occurring upon navigable waters of the United States. At its inception, the "LHWCA" did not consider claims by railroad workers because railroad workers never boarded vessels or performed work on navigable waters.  The purpose of the 1972 amendments was to move the "Jenson" line to the adjoining piers and terminal.

> "The main concern of the 1972 amendments was not with the scope of coverage, but with accommodating the desires of three interested groups, (1) shipowners, (2) employers of longshoremen required to indemnify shipowners, and (3) workers." <u>Northeast Marine Terminal v. Caputo</u>, 432 U.S. 249, at 262.

Congress responded by eliminating suits against vessels for unseaworthiness and outlawing indemnity agreements. The "LHWCA" eliminated the maritime claim of unseaworthiness against a vessel in response to the United States Supreme Court decision in *Seas Shipping Co, Inc.. v. Sieracki*, 328 U.S. 85, 66 S. Ct. 872 (1946), see also *Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 103 S. Ct. 2541 (1983). *Edmonds v. Compagnie Generale*, 443 U.S. 256, 99 S. Ct. 2753 (1979). No mention is made, nor was there any consideration of railroad workers as the line of coverage moved from navigable waters to adjoining piers and terminals. Congress preserved the longshoremen's right to sue a vessel owner for negligence. The legislative history makes no mention of, and indeed gave no consideration to the rights of railroad workers under "FELA", because until the definition of "maritime employment" expanded under decisions interpreting the "LHWCA", railroad workers were never covered under the act, nor was it ever contemplated by Congress.

Congress did preserve the longshoremen's right to sue third parties under 33 U.S.C. § 905(b). Congress also preserved the rights of Jones Act seamen who may be covered under the "LHWCA" to pursue their Jones Act claims against the vessel. *Southwest Marine, Inc. v. Gizoni*, 502 U.S. 81, 112, S. Ct. 486 (1991). In fact, a longshoreman presently may maintain a negligence action under 905(b) of the "LHWCA" against an owner of a

10

vessel who also acts as his own stevedore, even though the longshoreman has received "LHWCA" benefits from the owner-employer under 904 of the Act (33 U.S.C. § 904). *Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 103 S. Ct. 2541 (1983). Jones Act claims are preserved under 33 U.S.C. § 905(a) because the definition of "employee" does not include "a master or member of a crew of any vessel". 33 U.S.C. § 902(3)(b). Of significance, Jones Act (46 U.S.C. § 688) claims have adopted entire judicially developed doctrine of liability under "FELA". *American Dredging Co. v. Miller*, 510 U.S. 443, 127 L. Ed. 2d 285, 114 S. Ct. 981 (1994). *Lies v. Farrell Lines, Inc.*, 641 F.2d 765 (1981). The Jones Act is intertwined with "FELA" to the extent it derives all of its liability and negligence standards from "FELA". In retrospect, railroad workers are the only employees under the "LHWCA" whose third party right to sue was not preserved by the courts' interpretation of the Act.

Gilbert Bynum's affidavit (App. pp. 83-85) indicates he fell on debris on the railroad tracks while returning to the "middle shack" to retrieve a radio. He was not engaged in maritime activity at the time of his injury. Both *Etheridge v. Norfolk & Western*, 9 F.3d 1087 (4th Cir. 1993) and *Patterson v. CSX Transportation, Inc.*, 245 Va. 483, 429 S.E.2d 215 (1993), decided after *Chesapeake & Ohio Railway Co. v. Schwalb*, 493 U.S. 40, 110 S. Ct. 381 (1989) involved brakemen involved in

"an integral part of the unloading process." The court found that both men were engaged in maritime employment at the time of their accidents because by initiating the descent of railroad cars to the pier, the activity "constituted the inception of the loading process". _Etheridge_, F.3d at 1090. Bynum's activities at the time of his accident were not of a traditional maritime nature. Nothing he was doing at the time of his accident involved any part, no less an integral or essential part, of loading or unloading a vessel. Under the circumstances, to suggest that Bynum's "FELA" claims, authorized by statute, are superseded by "LHWCA" is illogical and violates the rules of statutory construction.

The "LHWCA" and "FELA" are mutually exclusive remedies. "FELA" was first enacted in 1908 and has a long history of railroad workers bringing negligence claims against its railroad employers for injuries sustained in the scope of their employment. The "LHWCA", first enacted in 1927, does not address directly or indirectly common carriers by railroad or injuries sustained by railroad workers while employed by railroads engaged in commerce. Where the two Acts of Congress intersect the Courts have concluded that the "LHWCA" prevails. To do so the court must find "LHWCA" contains an express or implied partial repeal of "FELA". But the intent to repeal, when two statutes are in irreconcilable conflict, must be clear and manifest. _Kremer v. Chemical Construction Corp._, 456 U.S. 461, 102 S. Ct. 1883 (1982); _Radzanower v. Touche Ross & Co._, 426 U.S. 148, 96 S.

Ct. 1989 (1976). An implied repeal must be evident from the language or operation

of a statute, and the conclusion that "LHWCA" repeals "FELA" would be contrary

to the normal principles of statutory interpretation. *Kremer v. Chemical*

*Construction Corp.*, 456 U.S. 461, 102 S. Ct. 1883 (1982).

      Courts should avoid statutory construction that renders portions of statutes

superfluous. *Lynch v. Lyng*, 872 F.2d 718, 723 (6th Cir. 1989) and when the text of

a statute is ambiguous, the court should look to other indicia of congressional

intent such as legislative history to interpret the statute. *Waldburger v. CTS corp.*,

723 F.3d 434 (4th Cir. 2013). *CGM, LLC v. BellSouth Telecomms, Inc.*, 664 F.3d

46, 53 (4th Cir. 2011).

      When interpreting statutes, the goal is to effectuate Congress's intent. *United*

*States v. Abdel Shafi*, 592 F.3d 602, 607 (4th Cir. 2010). Because "LHWCA" is an

ambiguous statute, one must look beyond the language of the statute to the

legislative history for guidance. *Stilner v. Beretta USA*, 74 F.3d 1473, 1482 (4th

Cir. 1996). A review of the legislative history of the "LHWCA" clearly

demonstrates that railroad workers may be covered by "FELA" was never

considered by Congress when drafting the "LHWCA". Indeed, it was not until

after several years of interpretation by the courts, who were mired in confusion as

the principles evolved, did "LHWCA" ever implicate "FELA" employees.

Considering the fact that railroad workers are one of the few employees who have

a statutory right to sue their employer, it seems illogical to suggest Congress meant to include them in the broad definition of land based employees.

It is a cardinal rule of statutory construction that repeals by implication are not favored. _Radzanower v. Touche Ross & Co._, 426 U.S. 148, 154 96 S. Ct. 1189 (1976). Turning to the legislative history of "LHWCA", it is silent regarding whether Congress intended to revoke the right of railroad workers employed at terminals loading coal onto vessels. Silence on an issue is some evidence that Congress did not intend such a result. _Stiltner v. Beretta USA_, 74 F.3d 1473, 1483 (4th Cir. 1996), see _Dewsnup v. Timm_, 502 U.S. 410, 112 S. Ct. 773, 779 (1992). Thus, from the legislative history it is clear Congress did not intend to repeal "FELA", particularly in view of U.  45 U.S.C. § 55 and 45 U.S.C. § 58

"FELA" is a specific statute addressing the rights of railroad workers to sue their employers when injured on the job. "LHWCA" is a general statute, covering Jones Act seamen, longshoremen, harbor workers, ship repairmen and others engaged in maritime employment. Under the rules of statutory construction, a specific statute takes precedence over the general statute, and it cannot be implied or inferred that the language of the general statute repeals the language of a specific statute. For these reasons, the "LHWCA" is not the exclusive remedy of a "FELA" employee injured on the job. A railroad worker has a statutory right to bring a negligence action against his employer, and "FELA" recognizes the right of

14

an employee to receive benefits under federal law and at the same time file an "FELA" action.

## **CONCLUSION**

Norfolk Southern filed an appeal of a remand order involving a railroad case improperly removed to the Federal District Court. The basis for following this procedure is outlined in *Shives v. CSX Transportation, Inc*, 151 F.3d 164 (1998). In explaining the decision to accept appellate jurisdiction of the district court's remand order in *Shives*, the court explained;

> "It is nevertheless clear that we took appellate jurisdiction in *Shives* because the district court made a decision that was a 'conceptual antecedent' to the remand order. That conceptual antecedent took the form of the district court's substantive ruling that, because the plaintiff had not been engaged in maritime employment, the application of the LHWCA had not been triggered in that case." *Nordan v. Blackwater*, 460 F.3d 576 (2006).

The District Court's order in this case was based upon a lack of subject matter jurisdiction. It was not based upon any finding that Bynum was engaged in maritime activity. Consequently, this appeal should be dismissed.

In the final analysis, there is no legislative history or other legal basis to conclude that the "LHWCA" preempts "FELA". To the contrary, "FELA" makes clear by its specific language that the railroad is prohibited, by contract, rule, regulation, or device, to exempt itself from liability created by "FELA". 45 U.S.C. § 58 of "FELA" also makes clear that any act that limits the duty or liability of the

15

railroad, or the right of a railroad worker to claim benefits under any other Act of

Congress, is void. Consequently, there can be no argument that the exclusivity

provisions of 33 U.S.C. § 905(a) defeat a "FELA" cause of action brought by a

railroad worker against his employer. For the reasons stated herein, the appeal by

Norfolk Southern should be dismissed.

/s/ William D. Breit, Esq.
*Counsel for Appellee*

William D. Breit
SERIOUS INJURY LAW CENTER
5544 Greenwich Road
Suite 100
Virginia Beach, VA 23462
(757) 456-0333 / (757) 456-0002 (fax)

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[ X ] this brief contains [*3,750*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[    ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

[    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: <u>December 2, 2013</u>        <u>/s/ William D. Breit            </u>
                                      *Counsel for Appellee*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 2nd day of December, 2013, I caused this Brief of Appellee to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

| | |
|---|---|
| Christopher R. Hedrick | Danielle M. Kruer |
| Jonathan H. Walker | Daniel R. Warman |
| MASON, MASON, | VENTKER & WARMAN, PLLC |
| WALKER & HEDRICK, PC | 101 West Main Street, Suite 810 |
| 11848 Rock Landing Drive, Suite 201 | Norfolk, Virginia 23510 |
| Newport News, Virginia 23606 | (757) 625-1192 |
| (757) 873-3909 | |
| | |
| *Counsel for Appellant* | *Counsel for Appellant* |

I further certify that on this 2nd day of December, 2013, I caused the required copies of the Brief of Appellee to be hand filed with the Clerk of the Court.

/s/ William D. Breit
*Counsel for Appellee*